Dominica C. Anderson (SBN 2988)
Daniel B. Heidtke (SBN 12975)
DUANE MORRIS LLP
100 N. City Parkway, Suite 1560
Las Vegas, NV  89106
Telephone: 415.957.3179
Facsimile:  702.974.1058
Email:  dcanderson@duanemorris.com
        dbheidtke@duanemorris.com

Douglas R. Gooding (*Pro hac vice forthcoming*)
Jean-Paul Jaillet (*Pro hac vice forthcoming*)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Telephone: +1 617.248.5000
Facsimile: +1 617.248.4000
Email: dgooding@choate.com
        jjaillet@choate.com

Richard F. Holley (SBN 3077)
Mary E. Bacon (SBN 12686)
Jeremy A. Moseley (*Pro Hac Vice forthcoming*)
SPENCER FANE LLP
300 S. Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: 702.408.3400
Facsimile: 702.408.3401
Email: rholley@spencerfane.com
        mbacon@spencerfane.com
        jmoseley@spencerfane.com

Attorneys for Plaintiffs *Ohio Security Insurance Company,
Peerless Indemnity Insurance Company,
The Ohio Casualty Insurance Company, and
West American Insurance Company*

# UNITED STATES BANKRUPTCY COURT

## DISTRICT OF NEVADA

In re:

AFFINITYLIFESTYLES.COM.INC.,

        Debtor.

_____

OHIO SECURITY INSURANCE COMPANY, a company organized under the laws of the State of New Hampshire; PEERLESS INDEMNITY INSURANCE COMPANY, a company organized under the laws of the State of Illinois; THE OHIO CASUALTY INSURANCE COMPANY, a company organized under the laws of the State of New Hampshire; WEST AMERICAN INSURANCE COMPANY, a company organized under the laws of the State of Indiana,

        Plaintiffs,

Case No.: BK-S-21-14099-NMC
Chapter 7

Adv No. _____

**COMPLAINT FOR BREACH OF CONTRACT AND FOR DECLARATORY JUDGMENT**

**[JURY TRIAL DEMANDED]**

vs.

AFFINITYLIFESTYLES.COM, INC. d/b/a
REAL WATER, a Nevada Corporation; REAL
WATER, INC., a Delaware Corporation;
REAL WATER OF TENNESSEE, LLC,

Defendants.

Plaintiffs, Ohio Security Insurance Company, Peerless Indemnity Insurance Company, The Ohio Casualty Insurance Company, and West American Insurance Company (collectively, "Plaintiffs"), by and through their attorneys, DUANE MORRIS LLP, CHOATE, HALL & STEWART LLP, and SPENCER FANE LLP, and for their Complaint for Breach of Contract and for Declaratory Judgment, state as follows:

## I.    NATURE OF THE ACTION

1.    This action involves an insurance dispute stemming from suits against Defendants ("Real Water") in numerous underlying actions (the "Underlying Actions"). In the Underlying Actions, the underlying plaintiffs alleged that they suffered injuries after consuming a product called "Re$^2$al Alkalized Water" ("Re$^2$al Water").

2.    In a separate action, Plaintiffs have interpleaded the total remaining limits of all policies issued to Real Water in United States District Court, District of Nevada, to allow for disbursal of the proceeds from Plaintiffs' insurance policies to the injured claimants, many with Nevada state court judgments, in respective amounts to be determined by the court.

3.    In this action specifically, Plaintiffs allege breach of contract for Defendants' failure to cooperate in the defense and settlement of the Underlying Actions. Defendants have taken inconsistent and misleading positions regarding Plaintiffs' ability to use the policy limits to resolve claims against Real Water and by then asserting that Plaintiffs in the instant action are now liable for amounts above the issued policy limits. These actions have damaged Plaintiffs and constitute breaches of the Policies.

2

4. Further, Plaintiffs seek declaratory relief in order to obtain a judicial determination of their rights and obligations under the Policies issued by them to Real Water, and a specific declaration that Plaintiffs have no liability beyond the policy limits.

**II.    PARTIES**

5. Ohio Security Insurance Company is a company organized under the laws of the State of New Hampshire and with its principal place of business in Boston, Massachusetts.

6. Peerless Indemnity Insurance Company is a company organized under the laws of Illinois and with its principal place of business in Boston, Massachusetts.

7. The Ohio Casualty Insurance Company is a company organized under the laws of the State of New Hampshire and with its principal place of business in Boston, Massachusetts.

8. West American Insurance Company is a company organized under the laws of Indiana and with its principal place of business in Boston, Massachusetts.

9. At all times relevant, Plaintiffs were authorized to do business in Nevada.

10. Upon information and belief, and at all times relevant herein, Defendant Affinity was and is a corporation organized and existing under the laws of Nevada and with its principal place of business in Las Vegas, Nevada.

11. Upon information and belief, and at all times relevant herein, Defendant RWI is a corporation organized and existing under the laws of Delaware and with its principal place of business in Mesa, Arizona.

12. Upon information and belief, and at all times relevant herein, Defendant RWT is a limited liability company organized and existing under the laws of Delaware and with its principal place of business in Mesa, Arizona.

**III.    JURISDICTION AND VENUE**

13. This Court has jurisdiction pursuant to 28 U.S.C. § 1332 as this is a civil action between citizens of different states where the matter in controversy exceeds $75,000, exclusive of interest and costs, and involves a judicial controversy between citizens of different states.

14. This Court also has jurisdiction because Defendants are now a bankruptcy Estate created under Title 11, Chapter 7 of the United States Bankruptcy Code.

3

15.     This court is the proper venue for this action under 28 U.S.C. § 1397 because one or more of the claimants reside in this judicial district.

16.     Venue is also proper pursuant to 28 U.S.C. § 1391 and 1409 as Defendants live, operate and/or do business in this judicial district, are subject to the Court's personal jurisdiction in this judicial district, and a substantial part of the events giving rise to the claims at issue herein occurred in this judicial district.

## IV.    THE INSURANCE POLICIES

17.     Subject to their terms, conditions, and exclusions, Peerless Indemnity Insurance Company issued four primary policies with policy number CBP1031766 (the "Peerless Primary Policies"); West American Insurance Company issued two primary policies, with policy numbers BKW (17) 56 93 29 40 and BKW (18) 56 93 29 40 (the "West American Primary Policies"); and Ohio Security Insurance Company issued two primary policies, with policy numbers BLS (20) 59 96 11 64 and BLS (21) 59 96 11 64 (the "Ohio Security Primary Policies"). The "Peerless Primary Policies," "West American Primary Policies," and "Ohio Security Primary Policies" are collectively referred to herein as the "Primary Policies". Subject to their terms, conditions, and exclusions, the Primary Policies contain limits of $1 million for bodily injury and property damage per occurrence and a $2 million general aggregate.

18.     Subject to their terms, conditions, and exclusions, Peerless Indemnity Insurance Company issued policy numbers CU8899267, CU8899267, CU8899267, and CU8899267 (the "Peerless Umbrella Policies"); and The Ohio Casualty Insurance Company issued policy numbers USO (17) 56 93 29 40 and USO (18) 56 93 29 40 (the "Ohio Casualty Umbrella Policies"). The Peerless Umbrella Policies and the Ohio Casualty Umbrella Policies are collectively referred to herein as the "Umbrella Policies." Subject to their terms, conditions, and exclusions, the Umbrella Policies contain limits of $1 million each occurrence and a $1 million aggregate.

19.     Subject to their terms, conditions, and exclusions, the Primary Policies and Umbrella Policies cover the following respective policy periods:

4

DENVER 9667401.12

| Policy Period | Policy Number |
|---|---|
| 2/4/12 – 2/4/13 | CBP1031766 (Commercial General Liability Policy) |
| 2/4/12 – 2/4/13 | CU889267 (Commercial Umbrella Coverage) |
| 2/4/13 – 2/4/14 | CBP1031766 (Commercial General Liability Policy) |
| 2/4/13 – 2/4/14 | CU889267 (Commercial Umbrella Coverage) |
| 2/4/14 – 2/4/15 | CBP1031766 (Commercial General Liability Policy) |
| 2/4/14 – 2/4/15 | CU889267 (Commercial Umbrella Coverage) |
| 2/4/15 – 2/4/16 | CBP1031766 (Commercial General Liability Policy) |
| 2/4/15 – 2/4/16 | CU889267 (Commercial Umbrella Coverage) |
| 2/4/16 – 2/4/17 | BKW (17) 56 93 29 40 (Commercial General Liability Policy) |
| 2/4/16 – 2/4/17 | USO (17) 56 93 29 40 (Commercial Umbrella Coverage) |
| 2/4/17 – 2/4/18 | BKW (18) 56 93 29 40 (Commercial General Liability Policy) |
| 2/4/17 – 2/4/18 | USO (18) 56 93 29 40 (Commercial Umbrella Coverage) |
| 6/7/19 – 6/7/20 | BLS (20) 59 96 11 64 (Commercial General Liability Policy) |
| 6/7/20 – 12/1/20[1] | BLS (21) 59 96 11 64 (Commercial General Liability Policy) |

20.     True and correct copies of the Policies are attached here as Exhibits **A** to **N**.  The terms, conditions, limitations and exclusions of the Policies are incorporated by reference as if set forth in full here.

21.     The Primary Policies were delivered to Real Water at their address in Nevada.

22.     The Umbrella Policies were delivered to Real Water at their address in Nevada.

23.     The Primary Policies and the Umbrella Policies provide, in pertinent part, that the insurance policy limits are fixed irrespective of the number of insureds, claims, suits, or persons.

24.     The Primary Policies state, in pertinent part, as follows:

COVERAGE A - BODILY INJURY AND PROPERTY DAMAGE LIABILITY

1.     Insuring Agreement

---

[1] Canceled December 1, 2020.

5

DENVER 9667401.12

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. But:

(1) The amount we will pay for damages is limited as described in Section III- Limits Of Insurance; and

(2) Our right and duty to defend end when we have used up the applicable limit of insurance in the payment of judgments or settlements under Coverages A or B or medical expenses under Coverage C.

No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under Supplementary Payments-Coverages A and B.

25. The Primary Policies further provide, in pertinent part:

SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

26. The Primary Policies further provide, in pertinent part:

[…]

3. "Bodily injury" means:

physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

27. The Peerless Umbrella Policies provide, in pertinent part:

I. COVERAGE
We will pay on behalf of the insured those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay is limited as described in SECTION III –

6

DENVER 9667401.12

LIMITS OF INSURANCE. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph 2. Defense And Expense Of Claims And Suits under SECTION I – COVERAGE.

28. The Peerless Umbrella Policies further provide, in pertinent part:

SECTION III – LIMITS OF INSURANCE

1. The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

a. Insureds;

b. Claims made or "suits" brought; or

c. Persons or organizations making claims or bringing "suits".

29. The Peerless Umbrella Policies provide, in pertinent part:

4. "Bodily injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease. This does not include "consequential bodily injury".

30. The Ohio Casualty Umbrella Policies provide:

I. COVERAGE

A. We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay for damages is limited as described in the INSURING AGREEMENT, SECTION II. LIMITS OF INSURANCE. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION III. DEFENSE.

31. The Ohio Casualty Umbrella Policies also provide, in pertinent part:

II. LIMITS OF INSURANCE

A. The Limits of Insurance shown in Item 4. of the Declarations and the rules below state the most we will pay regardless of the number of:

1. "Insureds";

2. "claims" made or "suits" brought; or

7

3.    persons or organizations making "claims" or bringing "suits."

32.    The Ohio Casualty Umbrella Policies also provide, in pertinent part:

V.    DEFINITIONS

C.    "Bodily injury" means

physical injury, sickness, or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person. "Bodily injury" does not include "bodily injury" arising out of "personal and advertising injury."

33.    The Primary Policies further provide, in pertinent part:

SECTION IV - COMMERCIAL GENERAL LIABILITY CONDITIONS

[. . .]

2.    Duties In The Event Of Occurrence, Offense, Claim Or Suit

[. . .]

c.    You and any other involved insured must:

[. . .]

(3)  Cooperate with us in the investigation or settlement of the claim or defense against the "suit"[.]

34.    The West American Primary Policies and Ohio Security Primary Policies contain the following pertinent provision:

NON-CUMULATION OF LIABILITY LIMITS
(SAME OCCURRENCE)

The following is added to Paragraph 5. under Section III - Limits Of Insurance:

Non-Cumulation of Liability - Same Occurrence - If one "occurrence" causes "bodily injury" or "property damage" during the policy period and during the policy period of one or more prior, or future, general liability policies issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policies because of such "occurrence."

8

"For purposes of this endorsement, the term us also includes any other company that is or was part of the Liberty Mutual Agency Corporation division of Liberty Mutual Group."

35.  The Primary Policies further provide, in pertinent part:

[. . .]

3.  "Bodily injury" means:

physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease.

[. . .]

13.  "Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

36.  The Peerless Umbrella Policies provide, in pertinent part:

COVERAGE

We will pay on behalf of the insured those sums in excess of the "retained limit" that the insured becomes legally obligated to pay as damages because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay is limited as described in SECTION III - LIMITS OF INSURANCE. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under paragraph 2. Defense And Expense Of Claims And Suits under SECTION I - COVERAGE.

b.  This insurance applies to:

(1)  "Bodily injury" or "property damage" only if:

(a)  The "bodily injury" or "property damage" occurs during the Policy Period; and

(b)  The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory"; and

(c)  Prior to the Policy Period, no insured listed under paragraph 1. of SECTION II - WHO IS AN INSURED and no "employee" authorized by you to give or receive notice of an "occurrence" or claim, knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such listed insured or authorized "employee" knew, prior to the Policy Period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or

9

DENVER 9667401.12

after the Policy Period will be deemed to have been known prior to the Policy Period. []

c.  "Bodily injury" or "property damage" which occurs during the Policy Period and was not, prior to the Policy Period, known to have occurred by any insured listed under paragraph 1. of SECTION II - WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the Policy Period.

d.  "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured listed under paragraph 1. of SECTION II - WHO IS AN INSURED or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

(1)  Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;
(2)  Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or
(3)  Becomes aware of any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

37.  The Peerless Umbrella Policies further provide, in pertinent part:

3.  Exclusions

This insurance does not apply to:

a.  Expected Or Intended Injury

"Bodily injury" or "property damage" expected or intended from the standpoint of the insured.

1.  Recall Of Products, Work Or Impaired Property

Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

(1) "Your product";

(2) "Your work"; or

(3) "Impaired property";

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

38.  The Peerless Umbrella Policies further provide, in pertinent part:

10

SECTION 11 - WHO IS AN INSURED

1.     Except for liability arising out of the "auto hazard":

     a.     If you are designated in the Declarations as:

     . . .

     (4)  An organization other than a partnership, joint venture or limited liability company, you are an insured. Your "executive officers" and directors are insureds, but only with respect to their duties as your officers or directors. Your stockholders are also insureds, but only with respect to their liability as stockholders.

39.     The Peerless Umbrella Policies further provide, in pertinent part:

SECTION III - LIMITS OF INSURANCE

1.     The Limits of Insurance shown in the Declarations and the rules below fix the most we will pay regardless of the number of:

     a.     Insureds;

     b.     Claims made or "suits" brought; or

     c.     Persons or organizations making claims or bringing "suits".

2.     The General Aggregate Limit is the most we will pay under this Coverage Part for all damages except for damages because of:

     a.     "Bodily injury" and "property damage" included in the "products-completed operations hazard", and

     b.     "Bodily injury" and "property damage" arising out of the ownership or use of an "auto".

. . .

4.     Subject to paragraphs 2. and 3. above, whichever applies, the Each Occurrence Limit is the most we will pay for the sum of all damages because of "bodily injury", "property damage" and "personal and advertising injury" arising out of any one "occurrence" or one "offense".

5.     If the applicable aggregate limits of liability of the "scheduled underlying insurance" or "other underlying insurance" are reduced or exhausted by payments for damages because of "bodily injury" or "property damage" that occur, or "offenses" that are committed, during the Policy Period of this policy, the Limits of Insurance of this Coverage

11

Part will apply in excess of such reduced or exhausted aggregate limits of liability.

6. If the limits of liability of the "scheduled underlying insurance" or "other underlying insurance" are reduced or exhausted by payments for damages because of "bodily injury" or "property damage" that occurred, or "offenses" that were committed, prior to the Policy Period of this policy, the Limits of Insurance of this Coverage Part will apply as if such payments had not been made.

40. The Peerless Umbrella Policies provide, in pertinent part:

4. "Bodily injury" means physical injury, sickness or disease sustained by a person. This includes mental anguish, mental injury, shock, fright or death that results from such physical injury, sickness or disease. This does not include "consequential bodily injury".

14. "Occurrence" means:

a. An accident, including continuous or repeated exposure to substantially the same general harmful conditions, that results in "bodily injury" or "property damage"; or
b. With respect to "employees" of the Named Insured, an accident or disease that results in "bodily injury".

16. "Other underlying insurance" means insurance that provides coverage for damages covered by this insurance, including any self-insurance or other funding mechanism intended to pay damages covered by this insurance. "Other underlying insurance" does not include "scheduled underlying insurance" or insurance purchased specifically to be excess of this Coverage Part.

22. "Retained limit" means either:

a. The total amount of "scheduled underlying insurance" or "other underlying insurance" applicable to the injury or damage whether such insurance is collectible or not; or
b. The Self Insured Retention. This means the amount you will pay as shown in the Declarations for injury or damage covered by this Coverage Part and not covered by any "scheduled underlying insurance" or "other underlying insurance". The Self Insured Retention will apply separately to each "occurrence" or "offense" to which this insurance applies. The Self Insured Retention does not apply to injury or damage which would have been covered by "scheduled underlying insurance" or "other underlying insurance" but for the exhaustion of applicable limits.

The insured will reimburse us promptly for any amount of judgments and settlements we pay on behalf of the insured that is within the Self Insured Retention.

12

DENVER 9667401.12

Case 25-01181-nmc    Doc 1    Entered 08/11/25 18:09:45    Page 13 of 36

23. "Scheduled underlying insurance" means the policies of insurance designated in the Schedule of Underlying Insurance shown in the Declarations of this Coverage Part, including any renewals or replacements of such policies, which provide the underlying coverages stated in the Schedule of Underlying Insurance.

41. The Ohio Casualty Umbrella Policies provide:

I. COVERAGE

A. We will pay on behalf of the "Insured" those sums in excess of the "Retained Limit" that the "Insured" becomes legally obligated to pay by reason of liability imposed by law or assumed by the "Insured" under an "insured contract" because of "bodily injury", "property damage" or "personal and advertising injury" to which this insurance applies. The amount we will pay for damages is limited as described in the INSURING AGREEMENT, SECTION II. LIMITS OF INSURANCE. No other obligation or liability to pay sums or perform acts or services is covered unless explicitly provided for under SECTION 111. DEFENSE.

B. This insurance applies to:

1. "Bodily injury" or "property damage" only if:

a. The "bodily injury" or "property damage" occurs during the Policy Period; and

b. The "bodily injury" or "property damage" is caused by an "occurrence" happening anywhere; and

c. Prior to the Policy Period, no "Insured" listed under paragraphs 1 .a., 2., 3. or 4. Of definition F. under SECTION V. DEFINITIONS, and no employee authorized by you to give or receive notice of an "occurrence" or "claim", knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed "Insured" or authorized employee knew, prior to the Policy Period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the Policy Period will be deemed to have been known prior to the Policy Period. []

C. "Bodily injury" or "property damage" which occurs during the Policy Period and was not, prior to the Policy Period, known to have occurred by any "Insured" listed under paragraphs l.a., 2., 3. or 4. of definition F. under SECTION V. DEFINITIONS, or any employee authorized by you to give or receive notice of an "occurrence" or "claim", includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the Policy Period.

D. "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "Insured" listed under paragraphs l.a., 2., 3. or 4. of definition F. under SECTION V.

13

DEFINITIONS, or any employee authorized by you to give or receive notice of an "occurrence" or "claim":

1.      Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

2.      Receives a written or verbal demand or "claim" for damages because of "bodily injury" or "property damage"; or

3.      Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

42.     The Ohio Casualty Umbrella Policies also provide, in pertinent part:

II.     LIMITS OF INSURANCE

A.      The Limits of Insurance shown in Item 4. of the Declarations and the rules below state the most we will pay regardless of the number of:

1.      "Insureds";

2.      "claims" made or "suits" brought; or

3.      persons or organizations making "claims" or bringing "suits."

B.      The General Aggregate Limit is the most we will pay for all damages covered under SECTION I. COVERAGE of the INSURING AGREEMENTS, except:

1.      Damages included in the "products-complete operations hazard"; and

2.      Coverages included in the policies listed in the Schedule of Underlying Insurance to which no underlying aggregate limit applies.

The amount stated on the Declarations as the General Aggregate Limit is the most we will pay for all damages arising out of any "bodily injury", "property damage" or "personal and advertising injury" subject to an aggregate limit in the "underlying insurance". The General Aggregate applies separately and in the same manner as the aggregate limits in the "underlying insurance".

C.      The Products-Completed Operations Aggregate Limit is the most we will pay for all damages included in the "products-completed operations hazard."

D.      Subject to B. or C. in SECTION II. LIMITS OF INSURANCE, whichever applies, the Each Occurrence Limit is the most we will pay for "bodily injury", "property damage" or "personal and advertising injury" covered under SECTION 1. COVERAGE of the INSURING AGREEMENTS because of all:

1.      "Bodily injury" or "property damage" arising out of one "occurrence"; []

E.      If the applicable Limits of Insurance of the policies listed in the Schedule of Underlying Insurance or of other insurance providing

14

DENVER 9667401.12

coverage to the "Insured" are reduced or exhausted by actual payment of one or more "claims," subject to the terms and conditions of this policy, we will:

    1.    in the event of reduction, pay in excess of the reduced underlying Limits of Insurance, or;

    2.    in the event of exhaustion, continue in force as "underlying insurance," but for no broader coverage than is available under this policy.

F.    The Limits of Insurance of this policy apply separately to each consecutive annual period and to any remaining period of less than 12 months, starting with the beginning of the policy period shown in the Declarations, unless the policy period is extended after issuance for an additional period of less than 12 months. In that case, the additional period will be deemed part of the last preceding period for purposes of determining the Limits of Insurance.

G.    Retained Limit

We will be liable only for that portion of damages, subject to the Each Occurrence Limit stated in the Declarations, in excess of the "retained limit," which is the greater of:

    1.    the total amounts stated as the applicable limits of the underlying policies listed in the Schedule of Underlying Insurance and the applicable limits of any other insurance providing coverage to the "Insured" during the Policy Period; or

    2.    the amount stated in the Declarations as the Self-Insured Retention as a result of any one "occurrence" or one "offense" not covered by the underlying policies listed in the Schedule of Underlying Insurance nor by any other insurance providing coverage to the "Insured" during the Policy Period;

and then up to an amount not exceeding the Each Occurrence Limit as stated in the Declarations.

Once the Self-Insured Retention has been exhausted by actual payment of "claims" in full by the "Insured," the Self-Insured Retention will not be reapplied or again payable the Insured" for said Policy Period.

43.    The Ohio Casualty Umbrella Policies also provide, in pertinent part:

IV.    EXCLUSIONS
This insurance does not apply to:

A.    "Bodily injury" or "property damage" expected or intended from the standpoint of the "Insured." This exclusion does not apply to "bodily injury" resulting from the use of reasonable force to protect persons or property.

15

H.     Damages claimed for any loss, cost or expense incurred by you or others for the loss of use, withdrawal, recall, inspection, repair, replacement, adjustment, removal or disposal of:

1.     "your product";
2.     "your work"; or
3.     "impaired property"

if such product, work or property is withdrawn or recalled from the market or from use by any person or organization because of a known or suspected defect, deficiency, inadequacy or dangerous condition in it.

44.     The Ohio Casualty Umbrella Policies also provide, in pertinent part:

V.     DEFINITIONS

C.     "Bodily injury" means

physical injury, sickness, or disease, including death of a person. "Bodily injury" also means mental injury, mental anguish, humiliation, or shock if directly resulting from physical injury, sickness, or disease to that person. "Bodily injury" does not include "bodily injury" arising out of "personal and advertising injury."

F.     "Insured" means each of the following, to the extent set forth:

1.     The Named Insured meaning"

a.     Any person or organization listed in Item 1. Of the Declarations, and any Company of which you own more than 50%, as of the effective date of this policy.

6.     Any of your partners, executive officers, directors, or employees but only while acting within the scope of their duties.[]

J.     "Occurrence" means:

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

45.     The Ohio Casualty Umbrella Policies also provide, in pertinent part:

NON-CUMULATION OF LIABILITY (SAME OCCURRENCE)

This endorsement modifies insurance provided under the following:

COMMERCIAL UMBRELLA COVERAGE PART

The following is added to paragraph D. under SECTION II - LIMITS OF INSURANCE:

16

DENVER 9667401.12

Non-Cumulation of Liability - Same Occurrence - If one "occurrence" causes "bodily injury" or "property damage" during the policy period and during the policy period of one or more prior, or future, commercial umbrella policy(ies) issued to you by us, then this policy's Each Occurrence Limit will be reduced by the amount of each payment made by us under the other policy(ies) because of such "occurrence."

46.    The Peerless Umbrella Policies also provide, in pertinent part:

SECTION IV - CONDITIONS

[. . .]

3.    Duties In The Event Of Occurrence, Offense, Claim Or Suit

[. . .]

c.    You and any other involved insured must:

[. . .]

(3) Cooperate with us in the investigation or settlement of the claim or defense against the "suit"[.]

47.    The Ohio Umbrella Policies also provide, in pertinent part:

VI.    CONDITIONS

[. . .]

F.    Duties In The Event Of Occurrence, Offense, Claim Or Suit

[. . .]

3.    You and any other involved "Insured" must:

[. . .]

(c) cooperate with us in the investigation, settlement or defense of the "claim" or "suit"[.]

48.    Defendants tendered the defense of the Underlying Actions to Plaintiffs beginning in March of 2021.

49.    Plaintiffs agreed to defend Real Water against certain of the Underlying Actions pursuant to reservations of rights.

17

## V.    FACTS

### *The Underlying Lawsuits and Applicable Policies*

50.    Beginning in March 2021, numerous individuals sued Real Water alleging injury from consuming Re$^2$al Water.

51.    Most of these individuals alleged injuries occurring between 2016 and 2020.

52.    Based on their terms and Plaintiffs' coverage defenses, Plaintiffs calculated that the Policies for the years 2016 to 2020 provided approximately $4-6 million in coverage, before the application of relevant coverage defenses.

### *The Bankruptcy Proceedings*

53.    On August 19, 2021, still in the early stages of the Underlying Actions, Real Water filed chapter 7 bankruptcy petitions in the U.S. Bankruptcy Court for the District of Nevada, initiating the following cases: *In re Affinitylifestyles.com, Inc.*, Case No. 21-14099; *In re Real Water, Inc.*, Case No. 21-14101; and *In re Real Water of Tennessee, LLC*, No. 21-14102 (together the "Real Water Bankruptcy Actions").

54.    Upon initiation of the Real Water Bankruptcy Actions, automatic stays were entered in the Underlying Actions brought by the underlying claimants against Real Water.

55.    Eager to proceed with their claims, some of the claimants began negotiating with the Chapter 7 Trustee appointed in the Real Water Bankruptcy Actions ("Defendants' Trustee"), to lift the automatic stays.

56.    In September 2021, some of the claimants entered into stipulations with Defendants' Trustee which, once entered by the Bankruptcy Court, lifted the automatic stays subject to certain conditions ("Stipulations").

57.    In exchange for being allowed to proceed with their civil actions, the underlying claimants agreed that, "in the event that an adverse judgment or other adjudication or determination of any liability of the Debtor is made arising out [of] the litigation, the Claimants *will look solely to the Debtor's insurance coverage, if any*, for any recovery for their alleged claims and damages

18

asserted in the Litigation[.]" *See, e.g., In re Affinitylifestyles.com, Inc.*, Case No. 21-14099, ECF No. 16, Stipulation (emphasis added).

58.    The Bankruptcy Court entered the Stipulations, and pursuant to their terms, the automatic stays in the Underlying Actions were lifted, and the claimants proceeded with their claims.

***Plaintiffs' Negotiations with Defendants' Trustee***

59.    On April 12, 2023, Plaintiffs filed an adversary proceeding complaint in U.S. Bankruptcy Court for the District of Nevada, Case No. 23-01082, seeking declaratory relief ("Declaratory Relief Complaint").

60.    In their Declaratory Relief Complaint, Plaintiffs sought judicial declarations that: (1) if the damages at issue in the Underlying Actions arose from an "occurrence," there was one "occurrence" in total; (2) the Primary Policies and Umbrella Policies providing coverage during the 2/4/2012-2/3/2016 policy periods are not implicated by the allegations in the underlying complaints and, therefore, do not provide coverage; (3) a determination that the "cooperation clauses" in the Policies were breached, and, as a result, Plaintiffs are released from any further obligations owed under the Policies; (4) attorneys' fees and costs awarded in the Underlying Actions are not covered under the Policies; and (5) punitive damages awarded in the Underlying Actions are not covered under the Policies. *Id.*

61.    By April 17, 2023, Plaintiffs, through their legal counsel, had begun discussions with Defendants' Trustee to resolve the claims asserted in the Declaratory Relief Complaint, to settle their coverage dispute, and to pay the Policies' proceeds to the Defendants' Trustee for the eventual disbursal to all individuals injured by Real Water, including those who had not entered a Stipulation, and Real Water's creditors.

62.    Real Water never answered or otherwise responded to the Declaratory Relief Complaint.

63.    Seeking Court approval of the negotiated settlement, on July 28, 2023, Defendants' Trustee filed Motions to (1) Approve Compromise Pursuant to the Federal Rule of Bankruptcy Procedure 363; (2) Approve the Sale of Insurance Policies Free and Clear of All Liens, Claims, Encumbrances, and interests Pursuant to 11 U.S.C. § 363; (3) Enter a Supplemental Injunction

19

Pursuant to 11 U.S.C. §§ 363 and 105(a); (4) Approve Claim Distribution Procedures; and (5) Approve Proof of Claim Form and Procedures, seeking approval of the Initial Settlement between Defendants' Trustee, on behalf of the Consolidated Debtors and Plaintiffs. *See In re Affinitylifestyles.com, Inc.*, Case No. 21-14099, ECF Nos. 235-236.

64. The Bankruptcy Court did not approve or deny the settlement but recommended the parties proceed to mediation.

65. After further negotiations, on December 11, 2023, Defendants' Trustee filed a Motion to Approve Compromise Pursuant to Federal Rule of Bankruptcy Procedure 9019 ("9019 Settlement Motion"), seeking approval of a revised settlement between Defendants' Trustee, on behalf of the Consolidated Debtors, and Plaintiffs.

66. On October 3, 2024, the Bankruptcy Judge denied the 9019 Settlement Motion without stating a reason.

67. The Bankruptcy Court has since taken the position that it does not have jurisdiction over the insurance policy proceeds.

*Interpleader*

68. On August 9, 2024, while still awaiting a written decision from the Bankruptcy Court on its 9019 Settlement Motion, Plaintiffs filed a Complaint in Interpleader and filed a motion seeking to deposit with the Bankruptcy Court's registry the total of $21.5 million, the Policies' combined aggregate limits less $500,000 for two accepted and paid Offers of Judgment. *See* Case No. 24-01073.

69. The Bankruptcy Court held a hearing on Plaintiffs' Motion to Deposit Funds but did not rule on the motion.

70. Some of the claimants moved to dismiss Plaintiffs' Interpleader Complaint arguing, among other issues, that the Bankruptcy Court had no jurisdiction over Plaintiffs' Interpleader Complaint.

71. In January 2025, Defendants' Trustee for the first time took the position that the Bankruptcy Court did not have jurisdiction over the policy proceeds.

20

72. Also in January 2025, Defendants' Trustee informed defense counsel for Real Water, in response to a new Offer of Judgment served on Real Water, that Defendants' Trustee no longer took a position on whether any offer of judgment violated the Stipulations lifting the automatic stay.

73. On January 28, 2025, while Plaintiffs continued to await the Bankruptcy Court's approval of Plaintiffs' Motion to Deposit, and after the change in position by Defendants' Trustee, Plaintiffs offered their remaining policy limits to all injured claimants jointly and, as of the date of this Complaint, this offer has not been accepted.

74. On March 4, 2025, the Bankruptcy Court granted Plaintiffs' unopposed Motion to Dismiss the Complaint in Interpleader, ruling the Bankruptcy Court did not have jurisdiction over the policy funds, which allowed the Plaintiffs to file an Interpleader in another court.

75. On March 5, 2025, Plaintiffs filed a Complaint in Interpleader seeking to interplead the remaining limits of the Policies in the United States District Court, District of Nevada, to be distributed equitably as the Court deems appropriate to all eligible claimants. *See* Case No. 25-cv-00399.

*Offers of Judgment*

76. Before the filing of the first Complaint in Interpleader and throughout the pendency of Real Water's bankruptcy proceedings, Real Water received various offers of judgments pursuant to Nevada Rule of Civil Procedure 68. Prior to entering their first negotiated settlement with Defendants' Trustee in July 2023, Real Water accepted, and Plaintiffs agreed to pay, and issued payment for, two early offers of judgment, each for $250,000.

77. On August 10, 2023, and during Plaintiffs' negotiations with Defendants' Trustee, Defendants' Trustee asserted that offers of judgment violated the Stipulations because they were an attempt "to obtain new claims against the Consolidated Debtors." Defendants' Trustee further asserted that "[b]ecause these actions violate the automatic stay, such actions are void and are of no legal effect."

78. Based upon Defendants' Trustee's position, Plaintiffs could not agree to fund additional offers of judgment for fear of sanctions and violation of the automatic stay.

21

DENVER 9667401.12

79. Defendants' Trustee's position, through his conduct, actions, and communications, to Plaintiffs in 2023, was that Plaintiffs' insurance policy funds could not be distributed outside of the bankruptcy proceedings.

80. Defendants' Trustee's position, through his conduct, actions, and communications, to Plaintiffs in 2024, was that Plaintiffs' insurance policy funds could not be distributed outside of the bankruptcy proceedings.

81. Plaintiffs relied on Defendants' Trustee's position that policy funds could not be distributed outside of the bankruptcy proceedings.

82. As of November 2024, Real Water had received approximately 50 Offers of Judgment totaling over $25,000,000, including:

   a. T. Abele: $975,000

   b. G. Maynard - $975,000

   c. L. Muniz - $450,000

   d. A. Bordenave - $925,000

   e. L. King - $975,000

   f. G. Land-Van Buren - $425,000

   g. R. Carrier - $975,000

   h. O. Gallagher - $250,000 – accepted

   i. K. Haley - $250,000 – accepted

   j. C. Rasmussen - $975,000

   k. M. Hunwardsen - $1,000,000

   l. D. Wei - $450,000

   m. V. Linke - $450,000

   n. H. Brown - $425,000

   o. P. Brown - $250,000

   p. K. Moreno - $425,000

   q. M. Noto - $425,000

   r. N. Chang - $425,000

22

DENVER 9667401.12

s.      K. Ryerson - $475,000

t.      J. Botiz - $475,000

u.      J. Hu - $500,000

v.      Y. Arnone - $500,000

w.      J. Schaffer - $500,000

x.      T. Hartshorn - $475,000

y.      C. Sosa - $475,000

z.      S. Morales - $475,000

aa.     J. Tegano - $475,000

bb.     B. Wren - $450,000

cc.     C. Wren - $975,000

dd.     C. Jones - $450,000

ee.     C. Nally - $425,000

ff.     N. D. Richard - $425,000

gg.     Estate of A. Ittah - $425,000

hh.     S. Wadkins - $475,000

ii.     J. Delmar - $425,000

jj.     P. Sutherland - $500,000

kk.     R. Ryerson - $475,000

ll.     R. Belsky - $2,000,000

mm.     D. Taylor - $975,000

nn.     T. Henry - $975,000

oo.     M. Brody - $350,000

pp.     L. Kaveh & Parent - $950,000

qq.     R. Morales - $475,000

rr.     C. B. Wren - $475,000

ss.     E. Wren - $250,000

83.     The Offers of Judgment in Paragraph 82 in total exceed the Policies' aggregate limits.

23

84.    The Offers of Judgment in Paragraph 82 were served and expired at a time that Defendants' Trustee's position to Plaintiffs was that Plaintiffs' insurance policy funds should not be distributed outside of the bankruptcy proceedings.

85.    As of the date of this filing, various tort claimants continue to serve Offers of Judgment on Real Water.

86.    Real Water has continued to accept some of these Offers of Judgment. However, even after the Bankruptcy Court stated it does not have jurisdiction over Plaintiffs' insurance policy proceeds, Plaintiffs cannot issue payment for these Offers of Judgment without exhausting available funds under the Policies before all injured claimants' claims are satisfied. Therefore, consistent with their prior efforts to ensure an equitable distribution of limited policy proceeds, Plaintiffs interpleaded the remaining limits of the Policies, as set forth above.

***Conduct of Real Water Employee Blain Jones***

87.    On information and belief, Blain Jones was at all relevant times a senior level employee for the Real Water Entities, served as Vice President, and was an officer of the company. Blain Jones was designated as and testified at a deposition as the "person most knowledgeable," NRCP Rule 30(b)(6) witness for Defendant Real Water, Inc., on January 12, 2023. On February 23, 2023, Blain Jones was deposed again and provided additional testimony in his individual capacity.

88.    About two months after testifying as the NRCP Rule 30(b)(6) witness for Defendant Real Water Inc., on or about March 14, 2023, Blain Jones filed a complaint for his own alleged injuries and damages against the Real Water Entities, asserting that the Real Water Entities should be held liable under negligence, negligence per se, breach of the implied warranty of merchantability, and various strict liability theories.

89.    On information and belief, counsel for Blain Jones is coordinating with counsel that represents Certain Tort Claimants, as defined herein.

90.    The testimony provided by Blain Jones purportedly in his individual capacity is being used by counsel for Certain Tort Claimants against Real Water as testimony of Real Water on the basis that it is the adverse testimony of a corporate designee of Real Water, the insured. This testimony by Blain Jones has been used by claimants against Real Water to obtain increased damages

24

against Real Water. This testimony by Jones, who is an insured, is a breach of the cooperation clauses of the Policies. Further, filing claims and pursuing damages against Real Water, of which he was an officer during the relevant times, after providing testimony as a corporate designee of Real Water breached the cooperation clauses of the Policies.

*The Verdicts*

91.    As of the date of filing this complaint, there have been five verdicts entered against Real Water. Those verdicts were entered in the following actions: *Gallagher et al. v. Affinitylifestyles.com dba Real Water, et al.,* Case No. A-21-834485-B; *Hunwardsen et al. v. Affinitylifestyles.com dba Real Water, et al.,* Case No. A-21-831543-B; the consolidated *Wren et al. v. Affinitylifestyles.com dba Real Water, et al.,* Case No. A-21-831169-B; the consolidated *Brown et al. v. Affinitylifestyles.com dba Real Water, et al.,* Case No. A-21-831776-B; and the consolidated *Land-Van Buuren v. Affinitylifestyles.com dba Real Water, et al.*, Case No. A-21-831725-B.

92.    The Underlying Actions continue to proceed to trial.

*Insufficient Limits*

93.    Plaintiffs were (and are) unable to accept and pay, on behalf of Real Water, each and every offer of judgment or settlement offer from the various tort claimants because such offers collectively exceeded the limits of the Policies, irrespective of coverage defenses.

94.    While the judgments obtained by some of the claimants against Real Water are currently on appeal, the total judgments ultimately obtained against Real Water by injured claimants will exceed the remaining available Policy limits.

95.    Real Water and Plaintiffs have never received a settlement demand that would have resolved all claims by all tort claimants against Real Water within the applicable Policies' aggregate limits.

96.    Real Water and Plaintiffs have never received a settlement demand that would have resolved all claims by all tort claimants against Real Water within the Policies' aggregate limits, regardless of the coverage defenses available to Plaintiffs.

25

*The Purported Bad Faith Claims*

97.    The Bankruptcy Court allowed claimants subject to Stipulations to proceed with their civil cases on the condition that if adverse judgment was entered against Real Water, monetary recovery would be limited to Real Water's "insurance coverage, if any." *See, e.g., In re Affinitylifestyles.com, Inc.*, Case No. 21-14099, ECF No. 16, Stipulation.

98.    Defendants' Trustee's position, through his conduct, actions, and communications, to Plaintiffs, was that Plaintiffs' insurance policy funds could not be distributed outside of the bankruptcy proceedings and that the individual offers of judgment were in violation of the Stipulations to lift the automatic stay.

99.    Defendants' Trustee previously entered into settlements with Plaintiffs that would have provided for a pro-rata distribution of the insurance proceeds to all injured claimants through the Bankruptcy Court.

100.    Any claim now, on behalf of Defendants, that Plaintiffs should have paid individual offers of judgment despite Defendants' Trustee's statements that the offers violated the Stipulations because the insurance policies were not subject to the automatic stay is a reversal of Defendants' position at the time the offers were made.

101.    Neither Defendants' Trustee nor Defendants have explained how Plaintiffs were to choose which claims to pay when doing so would have exhausted the Policies' limits and precluded payment of the Policies' proceeds to some or many injured claimants.

102.    Any claim now, on behalf of Defendants, that Plaintiffs should have paid or should pay individual offers of judgment is a reversal of Defendants' Trustee's prior position, on behalf of Defendants, seeking equitable pro-rata distribution of the insurance policies to all injured claimants in 2023 and 2024.

103.    Defendants' Trustee currently seeks to sell purported "bad faith claims" as an asset of the bankruptcy estate, to a specific subset of tort claimants ("Certain Tort Claimants"). *Id.* at Doc. 569, Motion to Approve Sale.

DENVER 9667401.12

104.    In turn, Certain Tort Claimants intend to use this purported "bad faith" claim to support their attempt to obtain recoveries from Plaintiffs beyond the limits of the Policies in contravention of the Stipulations.

105.    Plaintiffs were never presented with an offer of settlement for all claims of the Certain Tort Claimants at one time within the aggregate Policy limits.

106.    Further, Defendants' Trustee has repeatedly acknowledged the lack of bad faith on the record.

107.    For example, during the briefing of and hearing on the 9019 Settlement Motion in 2024, Defendants' Trustee responded to assertion by some of the claimants that the 9019 Settlement Motion should be denied because, among other reasons, it failed to account for alleged "bad faith" claims Real Water allegedly possessed against its insurers, including Plaintiffs.  In particular, Defendants' Trustee stated and admitted:

a.    "There are no bad-faith claims" (Case No. 21-14099, ECF No. 424, ¶ II.A.1.b.)

b.    ". . .Plaintiffs fail to provide evidence or legal support for their position that the Estate may pursue the Insurers for bad faith."[2]

c.    "Ultimately, ***Plaintiffs offer nothing which would give rise to a claim for bad faith*** outside their own conclusory statements."[3]

d.    "The Opposition also ignores the offers of judgment which were accepted and agreed to be paid by certain Insurers prior to negotiations with the Estate. Further, the focus in bad faith is the conduct between the insurer and its insured, and ***Plaintiffs fail to address how any claim for bad faith would lie given the ongoing negotiations between the Estate and the Debtors' Insurers***. As far as ***the Estate's claims against the Insurers for bad faith, the probability of success on such claims is astonishingly low*** given these negotiations. Put simply, ***the Trustee does not believe the Estate has a claim against the Insurers for bad faith***, . . ."[4]

e.    "The trustees explain at length ***why he does not believe those bad faith claims are viable because they're premised on not paying out offers of judgment while the insurer was negotiating with the trustee to turn over funds to the estate***."[5]

---

[2] ECF No. 424, 14:8-9.

[3] ECF No. 424, 15:4-5 (emphasis added).

[4] ECF No. 424, 15:9-17 (emphasis added).

[5] ECF No. 442, 53:10-14 (emphasis added).

27

DENVER 9667401.12

f. ". . .the ***trustee agrees there is no bad faith claim*** because the insurers negotiated this settlement of 12 million or 13 — I forget what the final number is — while this process was underway. ***So the trustee is not going to bring a bad faith claim***, . . . (y)et Mr. Works argues he's got a bad faith claim when there is none."[6]

g. "The trustee ***does not believe that's a viable [bad faith] claim***."[7]

h. "I believe it is the plaintiff's analysis of the bad faith claims that is insufficient. No one has yet explained how a bad faith claim can lie where the insurer was negotiating with the trustee for turnover of proceeds. I think the ***trustee would have a very hard time maintaining a bad faith claim against the insurer that it was negotiating with***."[8]

108. Despite these assertions and admissions, Defendants' Trustee has entered into a purchase agreement with Certain Tort Claimants pursuant to which Defendants' Trustee has agreed, subject to bankruptcy court approval, to sell alleged bad faith claims, if any, possessed by Real Water.

109. Plaintiffs and other parties have objected to the sale.

## **FIRST CLAIM FOR RELIEF**

### **(Breach of Contract)**

110. Plaintiffs repeat and re-allege each preceding allegation as though fully set forth herein.

111. In Nevada, the elements of a cause of action for breach of contract include (1) a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach.

112. The Policies are valid contracts between the parties.

113. Plaintiffs fully performed under the Policies.

114. Plaintiffs defended and are defending Real Water in the Underlying Actions.

115. Plaintiffs entered into proposed settlement agreements with Defendants' Trustee, which would have resulted in a pro-rata distribution of the settlement proceeds to be distributed by the Bankruptcy Court. The settlement agreements and amounts proposed to be paid took into account Plaintiffs' coverage defenses set forth herein, but the Bankruptcy Court did not approve the settlements.

---

[6] ECF No. 442, 61:4-11 (emphasis added).

[7] ECF No. 443, 14:9-10 (emphasis added).

[8] ECF No. 443, 44:14-21 (emphasis added).

28

116.    Defendants' Trustee has always maintained the settlements reached between Defendants' Trustee and Plaintiffs were reasonable and entered into in good faith.

117.    At no time prior to the Bankruptcy Court denying approval of the 9019 settlement did Defendants' Trustee claim Plaintiffs should have accepted individual offers of settlement or individual offers of judgment following the Stipulations lifting the automatic stay.

118.    The Policies contain "cooperation clauses" that require that the insured cooperate with the investigation, settlement or defense of any claim or suit.

119.    Real Water accepted, and Plaintiffs paid, two Offers of Judgment before Defendants' Trustee took the position through his conduct, actions, and communications, that Plaintiffs' insurance policy funds could not be distributed outside of the bankruptcy proceedings.

120.    When Defendants' Trustee took the position, through his conduct, actions, and communications, that Plaintiffs' insurance policy funds could not be distributed outside of the bankruptcy proceedings, Plaintiffs relied on and adhered to that interpretation.

121.    Based upon Defendants' Trustee's position, Plaintiffs could not agree to fund additional offers of judgment in the claimants' ongoing civil court actions for fear of sanctions and violation of the Stipulations lifting the automatic stay.

122.    Defendants' Trustee is currently seeking to sell Bad-Faith claims of the bankruptcy estate premised, in part, on Plaintiffs' failure to pay Offers of Judgment served during the automatic stay.

123.    Defendants' new assertion that Plaintiffs should have accepted individual offers of settlement outside of bankruptcy proceedings, contrary to the position of the Defendants' Trustee, at the time, is a breach of the cooperation clause that prejudiced Plaintiffs.

124.    Defendants' new assertion that Plaintiffs' failure to pay individual Offers of Judgment outside of bankruptcy proceedings is evidence of bad faith, contrary to the position of Defendants' Trustee, at the time, is a breach of the cooperation clause that prejudiced Plaintiffs.

125.    Further, as set forth above, Blain Jones's decision to file suit against the Real Water Entities, represented by the same counsel as Certain Tort Claimants, as a company officer of Defendant and two months after testifying as the NRCP Rule 30(b)(6) designee of the insured,

29

represents a fundamental and irreversible breach of the "cooperation clauses" contained in the Policies.

126.    Plaintiffs have suffered severe prejudice by this conduct.

127.    Plaintiffs have been and will continue to be damaged as a result of Defendants' failure to cooperate in the defense and settlement of claims, as required by the Policies.

128.    Defendants' breach of contract forecloses any further liability by Plaintiffs under the Policies.

129.    Plaintiffs request that an order be issued finding that Defendants breached the terms of the Policies by failing to cooperate in the defense and settlement of the claims; finding that coverage is vitiated under the Policies as a result of Defendants' failure to cooperate in the defense and settlement of the claims; and granting such other and further relief as the Court may deem just and proper.

**SECOND CLAIM FOR RELIEF**

**(Declaratory Relief – No Liability Beyond Policy Limits)**

130.    Plaintiffs repeat and re-allege each and every allegation contained above as though fully set forth herein.

131.    There is an actual and justiciable controversy ripe for determination by this Court.

132.    Plaintiffs have no liability beyond the Policies' limits because:

a.      Plaintiffs defended and continue to defend Real Water in the Underlying Actions;

b.      In the Stipulations, the claimants agreed to pursue only the insurance proceeds of Real Water, if any;

c.      The Stipulations insulated Real Water from any legal damages from any judgments;

d.      The Stipulations limited Real Water to the status of a nominal party in any further legal proceedings;

30

e.      There was no exposure to Real Water because further legal proceedings could only determine the amount of an injured claimant's claim to insurance proceeds in proportion to other injured claimants; and

f.      Plaintiffs were entitled to rely on Defendants' Trustee's position that Plaintiffs' policy funds could not be distributed outside the bankruptcy proceedings.

133.    Plaintiffs seek a declaration that Plaintiffs have no liability beyond the Policies' limits because, under Nevada law, an insurer cannot distribute insurance proceeds on a first-come, first-served basis, and without regard to remaining injured claimants and specifically, because:

a.      Plaintiffs should not exhaust the insurance proceeds and distribute based only on the timing of offers of judgments made to Real Water and without regard to remaining injured claimants with remaining claims against Real Water

b.      After the first verdict was entered, the damages for all claimants appeared to exceed the aggregate limits of the Policies under any theory of coverage;

c.      Plaintiffs therefore should not exhaust the insurance proceeds and distribute based only on timing of judgments entered against Real Water and without regard to remaining injured claimants with remaining claims against Real Water;

d.      Plaintiffs reasonably attempted to settle with the Defendants' Trustee, and provide the proceeds of their Policies to Defendants' Trustee and to the Bankruptcy Court for equitable, pro-rata distribution to all injured claimants; and

e.      Jurisdictions Nevada Courts follow, including California, reject first-come, first-serve settlements to the exclusion of remaining injured claimants.

134.    Plaintiffs seek a declaration Plaintiffs have no liability beyond the Policies' limits because the Defendants' Trustee admitted that any purported "bad faith" claims against Plaintiffs were (and are) unsupported and untenable and because:

31

DENVER 9667401.12

a.      Plaintiffs were entitled to rely and did rely on Defendants' Trustee's assertion that any purported "bad faith" claims against Plaintiffs were (and are) unsupported and untenable; and

b.      Plaintiffs were entitled to rely and did rely on Defendants' Trustee's assertions that Plaintiffs should negotiate the insurance policy proceeds with Defendants' Trustee as part of the Bankruptcy Estate and not outside the jurisdiction of the Bankruptcy Court.

135.    Plaintiffs seek a declaration that Plaintiffs have no liability beyond the Policy limits because, under Nevada law, for an insurer to be liable beyond policy limits, an insurer generally must first have an opportunity to settle the claims of all claimants within available policy limits and have no liability here, because, specifically:

a.      Plaintiffs never received a settlement demand within the Policies' aggregate limits that covered all claimants, regardless of which of Plaintiffs' Policies are included;

b.      Other entities also sought indemnity payments from these same policy funds in addition to Real Water;

c.      Plaintiffs never received a settlement demand within the aggregate Policy limits that covered all Certain Tort Claimants at the same time, regardless of which of Plaintiffs' Policies are included; and

d.      It was reasonably likely that accepting individual settlement demands when received would exhaust the Policies' limits leaving individual claimants without any recovery.

136.    Plaintiffs seek a declaration that Plaintiffs have no liability beyond the Policy limits because, Defendants' Trustee, as representative of the Estate of Real Water, was aware of the offers of judgment made to Plaintiffs and directed Plaintiffs that the offers of judgment were in violation of the Stipulations to lift the automatic stay.

137.    Plaintiffs seek a declaration that Plaintiffs have no liability beyond the Policy limits because, Defendants' Trustee, as representative of the Estate of Real Water, was aware of the offers

32

of judgment made to Plaintiffs and took the position that Plaintiffs' insurance policy funds could not be distributed outside of the bankruptcy proceedings.

138.    Plaintiffs seek a declaration that Plaintiffs have no liability beyond the Policy limits because, Plaintiffs, at all times, complied with the Nevada Unfair Claims Practices Act, NRS §§ 686A.310.

139.    Plaintiffs are informed and believe that Defendants dispute whether Plaintiffs have liability beyond the aggregate Policy limits and whether Plaintiffs acted reasonably and in accordance with the terms of their respective Policies and Nevada law.

140.    A determination is necessary and proper at this time so that Plaintiffs and Defendants may ascertain their respective rights and duties.

141.    Therefore, Plaintiffs seek a judicial determination of the parties' rights, duties and obligations under the Policies and Nevada law, including but not limited to, a judicial determination that Plaintiffs have no liability beyond the policy limits.

142.    Plaintiffs request that the Court issue a judicial declaration of the parties' rights, duties and obligations under the Policies and Nevada law, including a judicial determination that Plaintiffs do not have liability beyond the Policy limits already interpleaded into the United States District Court, District of Nevada in a separate action. Plaintiffs further request any and all judicial determinations that naturally flow from a ruling that Plaintiffs, at all relevant times, acted reasonably and in accordance with the terms of the Policies and Nevada law, and that the Court grant such other and further relief as it may deem just and proper.

### THIRD CLAIM FOR RELIEF

**(Declaratory Relief – Policy Limits Initially Available for Injured Claimants)**

143.    Plaintiffs repeat and re-allege each and every allegation contained above as though fully set forth herein.

144.    There is an actual and justiciable controversy presented for determination by this Court.

33

145. Because of the nature of the alleged injuries and product at issue, the Policies only provide coverage, if at all, upon each underlying plaintiff sustaining actual physical injury upon consumption of Real Water.

146. The allegations in the underlying complaints fail to allege any bodily injury during the Primary Policies and Umbrella Policies providing coverage during the 2/4/2012-2/3/2016 policy periods.

147. Accordingly, Plaintiffs seek a judicial determination that the Primary Policies and Umbrella Policies providing coverage during the 2/4/2012-2/3/2016 policy periods are not implicated by the allegations in the underlying complaints and, therefore, Plaintiffs initial coverage determination was reasonable.

148. Plaintiffs are informed and believe, and on that basis allege, that Defendants dispute the foregoing, including whether the Primary Policies and Umbrella Policies providing coverage during the 2/4/2012-2/3/2016 policy periods are implicated by the allegations in the Underlying Actions.

149. A determination is necessary and proper at this time so that Plaintiffs and Defendants may ascertain their respective rights and duties under the Policies.

150. Therefore, Plaintiffs seek a judicial declaration of the parties' rights, duties and obligations under the Policies, including but not limited to the Primary Policies and Umbrella Policies, and also seek a declaration that the Primary Policies and Umbrella Policies providing coverage during the 2/4/2012-2/3/2016 policy periods are not implicated by the allegations in the underlying complaints and, therefore, Plaintiffs' coverage position was reasonable.

151. Upon information and belief, Defendants, through their purported bad faith claims further allege that Plaintiffs' actions in reaching proposed settlements with the Defendants' Trustee for amounts less than the total amount that Plaintiffs interpleaded demonstrate unreasonable conduct and an attempt to pay less than the amounts actually owed under the policies.

152. While Plaintiffs have decided to interplead additional policy years first into the Bankruptcy Court and now into the United States District Court, this decision does not alter whether Plaintiffs were correct or, at a minimum, reasonable in negotiating with the Defendants' Trustee based on various coverage defenses available to Plaintiffs.

34

DENVER 9667401.12

153. While Plaintiffs have decided to interplead additional policy years first into the Bankruptcy Court and now into the United States District Court, this decision does not alter whether Plaintiffs were correct or, at a minimum, reasonable in determining that prior year policies were not triggered by the allegations of the injured Claimants.

154. A determination of the policy years actually triggered by the claims made in the Underlying Actions against Real Water is necessary at this time so that Plaintiffs and Defendants may ascertain whether Defendants are able to rely on the accuracy or reasonableness of this interpretation in pursuit of other claims.

## **PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiffs pray for the following relief:

A. An order finding that Defendants breached the terms of the Policies by failing to cooperate in the defense and settlement of the claims;

B. An order finding that coverage is vitiated under the Policies as a result of Defendants' failure to cooperate in the defense and settlement of the claims;

C. A judicial declaration that Plaintiffs have no liability beyond the Policy limits already interpleaded into the United States District Court, District of Nevada Case No. 25-cv-00399 based on this Court's determination of Nevada law;

D. A judicial declaration of the parties' rights, duties and obligations under the Policies and Nevada law, including in particular, a judicial determination that Plaintiffs' initial coverage position that the Primary Policies and Umbrella Policies during the 2/4/2012-2/3/2016 policy periods are not implicated by the allegations in the underlying complaints was reasonable; and

/ / /

/ / /

35

DENVER 9667401.12

E.     Granting such other and further relief as the Court may deem just and proper.

Dated: August 11, 2025                          **SPENCER FANE LLP**


  */s/ Richard F. Holley*
Richard F. Holley (SBN 3077)
Mary E. Bacon (SBN 12686)
Jeremy A. Moseley (*Pro Hac Vice*)
300 S. Fourth Street, Suite 1600
Las Vegas, Nevada 89101
Telephone: 702.408.3400
Facsimile: 702.408.3401
Email: rholley@spencerfane.com
        mbacon@spencerfane.com
        jmoseley@spencerfane.com

and

**DUANE MORRIS LLP**
Dominica C. Anderson (SBN 2988)
Daniel B. Heidtke (SBN 12975)
100 N. City Parkway, Suite 1560
Las Vegas, NV  89106
Telephone: 415.957.3179
Facsimile:  702.974.1058
Email:  dcanderson@duanemorris.com
        dbheidtke@duanemorris.com

Attorneys for Plaintiffs *Ohio Security Insurance Company, Peerless Indemnity Insurance Company, The Ohio Casualty Insurance Company, and West American Insurance Company*

36

DENVER 9667401.12